970 So.2d 1094 (2007)
Tywanna BAKER
v.
TMSEL.
No. 07-CA-227.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2007.
*1095 Marc E. Belloni, Martin L. Broussard, Jr., Attorneys at Law, New Orleans, LA, for Plaintiff/Appellee.
Philip J. Borne, Oscar M. Gwin, IV, Attorneys at Law, New Orleans, LA, for Defendant/Appellant.
Anna E. Dow, Attorney at Law, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
In this workers' compensation case, judgment was rendered in favor of the claimant, Tywanna Baker. Appellant, Transit Management of Southeast Louisiana, Inc. ("TMSEL"), contends that the workers' compensation judge was manifestly erroneous in finding that Ms. Baker suffered a compensable injury connected to a workplace accident. For the reasons stated herein, we affirm.
Facts and Procedural History
Tywanna Baker was employed by TMSEL as a transit operator from 1998 until 2002. On May 14, 2002, Ms. Baker presented to the emergency room for back and leg pain, and she was hospitalized from June 10, 2002 until June 17, 2002 for a blood clot. She discontinued working after the May incident due to pain. She subsequently filed a disputed claim for compensation seeking wage benefits and medical treatment. TMSEL disputed that Ms. Baker suffered a work-related accident and therefore denied her claim.
TMSEL subsequently brought a motion for summary judgment as to Ms. Baker's claims and this motion was denied by judgment rendered on November 10, 2004 on the basis that the trial judge found genuine issues of material fact.
Trial on the merits in this matter was held on August 31, 2006. The parties stipulated that Ms. Baker was employed by TMSEL during all relevant times, and *1096 they also stipulated to the admission of the medical records.
At trial, Tywanna Baker testified that she sustained injury to her lower back at the L3-L4 levels and that she was also diagnosed with deep vein thrombosis as evidenced by a blood clot in her left leg. She stated that she experienced back pain in May of 2002 due to the movement and bumping of driving the bus. She stated that she had a previous vehicular accident in 2001 when a vehicle hit the bus which she was driving in connection with her employment. She stated that she sought medical treatment for the back injury she sustained in 2001 from her employer's physician, but that she did not file a workers' compensation claim at this time. She stated she saw Dr. Norman Ott for a period of 3-6 months during which time she continued to work. She stated she was discharged by Dr. Ott in August of 2001 and she continued working as a bus driver although she had some back pain.
Ms. Baker admitted that she was not involved in a vehicular accident after April of 2001, but that on May 14, 2002 her back began hurting and her leg began to swell without any type of traumatic event. The medical records indicate that she reported a twisting of her torso as the onset of the symptoms and that she told medical personnel that her back "shut down" on this date. Following an emergency room visit, she was given medication and told to follow up with her doctor. However, she was unable to continue working due to the pain she experienced at this time.
Ms. Baker stated that she subsequently underwent an MRI and that she saw Dr. Alix Bouchette on May 22, 2002. At this time, she was diagnosed with a herniated disc in her lower back and she was referred to a neurologist for the disc injury. Ms. Baker stated that the neurologist, Dr. Frank Culicchia, subsequently noticed the swelling in her leg and diagnosed her with deep vein thrombosis. She also saw Dr. Robert Kessler, who told her she could not drive the bus any longer. She then informed her employer of this condition by completing an Occupational Injury Report Form. Ms. Baker stated that the last wages she earned from TMSEL were $16 or $17 per hour.
Ms. Baker testified that she was hospitalized for seven days in June of 2002 because of the deep vein thrombosis. She said that although that condition resolved, she continues to take medication for that condition. Ms. Baker testified that she continues to seek medical treatment for her back from Dr. Robert Lesser. She stated that due to her medical condition she is no longer able to work because she has to sit, stand and prop her leg up during the day due to numbness, tingling and a burning sensation in her leg. She stated that she has not looked for another type of employment due to the pain she experiences.
The workers' compensation judge took this matter under advisement and rendered a judgment on October 10, 2006 finding that Tywanna Baker had suffered a compensable work injury on May 14, 2002 to her back and left leg for which she continues to be temporarily totally disabled. The judgment further provided that Ms. Baker was entitled to weekly benefits in the amount of $398 and to the payment of all medical expenses relating to this accident. The workers' compensation judge also assigned reasons for judgment on October 12, 2006.
By this appeal, TMSEL contends that the workers' compensation judge manifestly erred in finding claimant suffered a compensable injury to her left leg because the deep vein thrombosis which was diagnosed is a perivascular injury that is specifically excluded from the purview of the *1097 workers' compensation statute, La. R.S. 23:1021(8)(e). Further, TMSEL contends on appeal that the workers' compensation judge was manifestly erroneous in finding claimant sustained a compensable injury to her back as claimant failed to meet her burden of proving the existence of a work-related accident on May 14, 2002.
Law and Discussion
Workers' compensation benefits are available for claimants who suffer personal injury by accident arising out of and in the course of employment. La. R.S. 23:1031(A). An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
The claimant's burden of proof in establishing a causal relationship between a job-related accident and the disability is by a preponderance of the evidence. Quinones v. U.S. Fidelity and Guaranty Company, 93-1648 (La.1/14/94), 630 So.2d 1303, 1306-07; Lafrance v. Custom Built Torque Convertors, 96-971 (La.App. 5 Cir. 4/29/97), 694 So.2d 1027, 1030. There is a legal presumption that the accident caused the disability when an employee proves that before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition. Id. The medical testimony "must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events in order to judicially determine probability . . ." Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982). Further, an employee's pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320, 324 (La.1985); Rhoto v. Louisiana Transmission Parts, 95-965 (La.App. 5 Cir. 3/13/96), 670 So.2d 1388, 1392.
Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. Quinones v. U.S. Fidelity and Guaranty Company, 630 So.2d at 1307; Rhoto v. Louisiana Transmission Parts, 670 So.2d at 1392. In other words, in order for the party denying the existence of the presumed causal relationship to prevail, he must produce evidence and persuade the trier of fact that it is more probable than not that the work-related injury did not accelerate, aggravate, or combine with the preexisting disease or infirmity to produce the employee's disability. Id; See also, Penny v. Avondale Container Service, 93-966 (La.App. 5 Cir. 3/29/94), 636 So.2d 980, 983; Fiffie v. Borden, Inc., 92-1062 (La.App. 5 Cir. 5/12/93), 618 So.2d 1199, 1202, writ denied, 93-1610 (La.9/24/93), 624 So.2d 1235.
In a workers' compensation case, the standard of review has been set forth by this Court as follows in Hookfin v. Advantage Nursing Services, 03-340 (La. App. 5 Cir. 10/15/03), 860 So.2d 57, 59, writ denied, 03-3136 (La.1/30/04), 865 So.2d 85:
The manifest error standard of review applies to factual findings in a workers' compensation case. Chaisson v. Cajun *1098 Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380; Scuderi v. Crazy Johnnie Cafe, Inc., 02-243. p. 4 (La.App. 5th Cir.10/16/02), 831 So.2d 1037, 1040. In applying the manifest error-clearly wrong standard, we must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Chaisson, 97-1225 at p. 13; 708 So.2d at 380; Scuderi, 02-243 at p. 4, 831 So.2d at 1040. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though we may feel that its own evaluations and inferences are as reasonable. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993); Gray v. H.B. Zachary Const. Co., 01-276, p. 6 (La.App. 5th Cir.9/25/01), 798 So.2d 271, 274, writ denied, 01-2847 (La.1/4/02), 805 So.2d 207. Thus, where there are two permissible views of the evidence, a factfinder's choice of them can never be manifestly erroneous or clearly wrong. Chaisson, 97-1225 at p. 14, 708 So.2d at 381; Scuderi, 02-243 at p. 4, 831 So.2d at 1040. Thus, if the factfinder's findings are reasonable in light of the record, we may not reverse or modify the judgment. Chaisson, 97-1225 at p. 14, 708 So.2d at 381; Scuderi, 02-243 at p. 4, 831 So.2d at 1040-1041.
With regard to the back and leg injury, the workers' compensation judge found that Ms. Baker suffered a compensable work injury on May 14, 2002. The judge found that Ms. Baker twisted her torso on that date which was an identifiable precipitous event that caused her injury. The judge also found that there was a causal connexity between the precipitous event and the resulting leg and back injury. After a review of the record, we find that the testimonial and medical evidence in the record fully supports the findings of the workers' compensation judge with regard to Ms. Baker's back and leg injury.
Ms. Baker testified that she first injured her back in a work-related accident while driving a bus in April of 2001. She was treated for this injury for several months, and resumed her normal duties as a bus driver. Ms. Baker testified that on May 14, 2002, her back began hurting and she reported that a twisting of her torso on that date caused pain which prevented her from returning to work. She reported to the emergency room that day complaining of low back pain radiating to her left leg.
The medical evidence indicates that Ms. Baker was diagnosed by Dr. Alix Bouchette with a herniated disc on May 22, 2002. Further, the evidence in the record fully supports a conclusion that the injury was work-related. The treating neurologist, Dr. Frank Culicchia, found that "a left lateral recess sequestered fragment . . . at the L4 level . . . may well account for her complaints." Based on all of the evidence presented, the workers' compensation judge concluded that the May 14, 2002 twisting event described by Ms. Baker caused her back and leg pain. Dr. Isaac Kirschbom found that Ms. Baker is significantly disabled, and that she is not capable of returning to work driving a bus full or part time. In sum, the evidence supports a finding that the work-related event on May 14, 2002, which aggravated a pre-existing back injury suffered in April of 2001, accounts for the back and leg injury sustained by Ms. Baker.
In disputing that Ms. Baker's injury is compensable, TMSEL relies on the fact that Ms. Baker failed to describe a new accident on May 14, 2002 and denied the occurrence of a traumatic event on that date. However, TMSEL failed to produce evidence or otherwise persuade the trier of *1099 fact that Ms. Baker's previous back injury was not accelerated by an incident on May 14, 2002.
Rather, the undisputed evidence in this case indicates that Ms. Baker suffered a work-related injury to her back in 2001. She was treated and attempted to continue her employment as a bus driver, but the twisting incident on May 14, 2002 aggravated her previous back injury and prevented her from continuing her employment. The medical evidence undisputably shows that Ms. Baker suffered a disc herniation which became evident after the May 2002 incident.
The findings of the workers' compensation judge that the "identifiable precipitous event" on this date constitutes a compensable work injury for which Ms. Baker continues to be temporarily totally disabled is supported by the record. Absent manifest error, we fail to disturb the factual findings in this case.
In arguing that claimant's left leg injury is not work-related or compensable, TMSEL relies on La. R.S. 23:1021(8)(e), which provides as follows:
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
This provision, added by La.Act. No. 454, § 1, of 1989, became effective January 1, 1990. It imposes a more stringent test for recovery than was previously set out in our jurisprudence. See, e.g., Carruthers v. PPG Industries, Inc., On Rehearing, 551 So.2d 1282 (La.1989); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). First, a standard of clear and convincing evidence is imposed rather than the previous standard, a preponderance of the evidence. Second, the worker must demonstrate that the physical work stress experienced was "extraordinary and unusual" in comparison to that experienced by the average employee in that occupation, rather than as previously compared to stress in a non-employment setting. And finally, the amendment added the requirement that the worker establish that the physical work stress "and not some other source of stress or preexisting condition" was "the predominant and major cause" of the heart related or perivascular injury, illness or death.
TMSEL contends that deep vein thrombosis (DVT) constitutes a perivascular injury which is not considered a personal injury by accident arising out of workplace employment pursuant to La. R.S. 23:1021(8)(e). In her brief filed in this Court, Ms. Baker does not dispute that the DVT is noncompensable, but she argues that the condition nevertheless contributes to her disability. We agree.
Pursuant to the holding of the Louisiana Supreme Court in Hatcherson v. Diebold, Inc., 00-3263 (La.5/15/01), 784 So.2d 1284, 1291, a showing of "physical work stress" is required prior to compensability for a perivascular injury under the workers' compensation statute. In the present case, the record contains no evidence that Ms. Baker's job involved strenuous manual *1100 labor, or that she was engaged in physical work stress at the time of her injury. Rather, the record shows that she was performing the usual duties of her employment at the time of her injury. Although the workers' compensation judge relied on the medical evidence that the claimant's "clot formation is secondary to her occupation and lifestyle rather than of underlying hypercoagulable state," we find that based on the current state of the law, the DVT as evidenced by the blood clot is a noncompensable injury under the specific provisions of La. R.S. 23:1021(8)(e).
Nevertheless, the evidence in the record supports the findings of the workers' compensation judge that Ms. Baker is temporarily totally disabled due to the back injury which included radiating leg pain which was diagnosed as a herniated disc. Although Ms. Baker was also diagnosed with DVT, that condition does not account for the back and radiating leg pain which caused her disability. Ms. Baker's vascular condition does not disqualify her claim because the work-related back injury combined with this condition produce the disability for which compensation is claimed.
Conclusion
Accordingly, for the reasons assigned herein, we find no manifest error in the judgment of the workers' compensation judge finding Tywanna Baker is entitled to workers' compensation benefits as a result of a work-related injury. The judgment is hereby affirmed and TMSEL is liable for all costs of this appeal.
AFFIRMED.